## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBIN ALLMAN, MARGARET BAUGHER, | ) | |
| MARK BAUGHER, KRISTIE BINDA, | ) | |
| GARY DAVIS, ANDREW GREENE, | ) | |
| AMBER LEWIS-LILLY, MICHAEL McKINLEY, | ) | |
| TIM STIRES, JEFF WELKER, and | ) | |
| ROBERT ALLMAN | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-0568-TWP-DML |
| | ) | |
| KEVIN SMITH, in his individual capacity and in | ) | |
| his official capacity as Mayor of the City of | ) | |
| Anderson, and the CITY OF ANDERSON, | ) | |
| | ) | |
| Defendants. | ) | |

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Mayor Kevin Smith, in his individual capacity and in his official capacity ("Mayor Smith"), and the City of Anderson ("the City") (Dkt. 52). Plaintiffs, Robin Allman, Margaret Baugher, Mark Baugher, Kristie Binda, Gary Davis, Andrew Greene, Amber Lewis-Lilly, Michael McKinley, Tim Stires, Jeff Welker, and Robert Allman, each supported the Democratic Party's candidate for Mayor of the City in the November 2011 election and each have asserted claims under 42 U.S.C. § 1983 ("§ 1983") that they were terminated due to their political affiliation in violation of the First Amendment of the United States Constitution. Defendants assert that each of the Plaintiffs held positions that were exempt from First Amendment protection because political affiliation was an appropriate requirement for the effective performance of their jobs. Mayor Smith also argues that he is protected from individual liability under the doctrine of qualified immunity. Oral argument was held on the motion on January 15, 2014, and the Court took the

matter under advisement. Having considered the parties' arguments and briefs, the Defendants' motion is **DENIED in part** and **GRANTED in part**.

## I.     BACKGROUND

Each of the Plaintiffs held various positions within the Anderson city government at the time of their termination and each publically supported the Democratic candidate in the November 2011 election. Defendant Kevin Smith, a Republican, was elected Mayor in November 2011, and his term began on January 1, 2012. Following his election, Mayor Smith terminated the Plaintiffs. He does not dispute that the terminations were politically motivated; however, he asserts that each of the Plaintiffs held a policymaking or confidential position such that they were exempt from protection under the First Amendment. The Plaintiffs held the following positions with the City:

**A.     Robin Allman**

Ms. Allman worked for the city for over 20 years in many different positions. At the time of her termination, she worked as a Cashier in the Utility Department. As Cashier, she was responsible for receiving and recording receipts and secretarial duties, and neither party disputes that this was a non-political position. However, at the time of the election, Ms. Allman worked as the Office Manager of the Utilities Department. As Office Manager, Ms. Allman's duties included planning, organizing, and supervising personnel and operations; overseeing development of public relations programs to enhance the public image of the Utility Office; overseeing utility billings and other office mailings; receiving and investigating citizen complaints pertaining to the Utility Office; preparing and submitting all required narrative, financial, and statistical reports; devising and implementing new office procedures; and interacting with state and City officials and customers regarding rate changes.

Before Mayor Smith took office, Ms. Allman was notified via letter that she would be terminated from her Office Manager position when he assumed office.  Ms. Allman bid on an open Cashier position on December 19, 2011 and was awarded the position on December 21, 2011.  The Cashier position had been posted since at least November 2011.  She began working as a Cashier on December 27, 2011, prior to Mayor Smith taking office.  On January 3, 2012, after Mayor Smith took office, Ms. Allman was informed that she would be promoted back to Office Manager so that she could be terminated by the City.

**B.     Margaret Baugher**

Ms. Baugher had worked for the City for 9 years and at the time of her termination, worked as Customer Service Supervisor in the City's Utility Department.  She reported to the Assistant Manager for the Utility Department.  As Customer Service Supervisor, Ms. Baugher was responsible for directing personnel, assisting customers, and making billing adjustments, as well as receiving and responding to customer inquiries and complaints, assisting customers in initiating and terminating services, and coordinating new sewer and storm water accounts with the appropriate City department.  Ms. Baugher was terminated on March 22, 2012.

**C.     Mark Baugher**

Mr. Baugher had worked for the City for nearly 33 years in various positions.  He worked as the Director of Operations of the City of Anderson Transit System ("CATS") at the time Mayor Smith was elected.  After Mayor Smith appointed Stephon Blackwell to be the General Manager of CATS, the position to which the Director of Operations reports, Mr. Baugher was demoted to Street Supervisor/Dispatcher on January 23, 2012.   One week later, he was terminated from his position as Street Supervisor/Dispatcher.

As Street Supervisor/Dispatcher, Mr. Baugher was responsible for planning, directing, and overseeing street operations, including scheduling buses and assignment of routes and drivers; supervising and directing department bus drivers; investigating traffic accidents involving department vehicles and street conditions; receiving and investigating citizen complaints regarding buses and routes; and maintaining employee work records. The Street Supervisor/Dispatcher reported to the Director of Operations.

**D.     Kristie Binda**

Ms. Binda worked as the Secretary for the City Fire Department. As Fire Department Secretary, Ms. Binda was responsible for answering telephones, paying bills for all seven stations, handling shipping and receiving, typing memorandums to fire fighters, and typing the budget proposal that was created by the Fire Chief and the Chief's deputies. She was also responsible for maintaining personnel files and other office records. Ms. Binda reported directly to the Fire Chief. She was terminated on January 17, 2012.

**E.     Gary Davis**

Mr. Davis had worked for the City for more than 27 1/2 years prior to his termination. Defendants originally asserted that Mr. Davis worked as the Manager of Operations for the Anderson Water Utility. However, Plaintiffs assert that Mr. Davis was demoted from the Manager of Operations position to a Project Supervisor position in June 2010, and held the Project Supervisor position at the time of his termination. Defendants argue that the City's records showed that Mr. Davis was the Manager of Operations at the time of his termination and that there is no documentation of his demotion, therefore, this is the position that the Defendants believed that he held at the time of his termination on December 16, 2011.

The Manager of Operations was responsible for planning and implementing water utility operations according to instructions and discussions with the Superintendent of the Water Department; allocation of human and material resources to maintain water lines, filter plants and wells; training and disciplining subordinate employees; receiving and investigating water-related customer complaints, determining problems, reporting findings, and making recommendations for repairs; assembling the annual budget in accordance with goals established by the Superintendent and authorized expenditures upon approval of budget; preparing annual reports; and doing speaking engagements in the community.  The Project Supervisor was responsible for overseeing construction projects undertaken at the direction of the Superintendent; inspecting the water department facility; and conducting tests of the City's water.

## F.    Andrew Greene

Mr. Greene worked as an Information Services Technician.  His official job description stated that he was responsible for managing and maintaining the operation of the City's central computer system; installing, upgrading and/or replacing computer software and hardware; maintaining the City's computer network; answering and responding to help desk calls; developing and maintaining the City's website as required; and performing duties of the Head Computer Operator in his/her absence.  Plaintiffs claim that the official job description did not accurately reflect Mr. Greene's actual duties, and that the job description for Information Services Technician was modified following an audit in March 2012 (subsequent to Mr. Greene's termination).  Prior to that, the job description had last been modified in 2005.

## G.    Amber Lewis-Lilly

Ms. Lewis-Lilly was employed by the City for nearly 14 years prior to her termination. At the time of her termination, Defendants assert that she held the position of Contract Manager

5

for Community Development/Long Range Planning; however, Ms. Lilly-Lewis claims that she held the position of Project Contract Specialist for the Anderson Department of Economic Development, and that she was hired into this position in 2009. Defendants admit in their Reply brief that they believed Ms. Lewis-Lilly held the position of Contract Manager at the time of her termination due to an employee error in the Human Resources Department, and that she did actually hold the Project Contract Specialist position. However, Defendants argue that Mayor Smith would have made the same decision to terminate Ms. Lewis-Lilly had he been aware of her correct job description and that both positions are exempt from First Amendment protection.

The Contract Manager position was responsible for developing, coordinating, and monitoring City-wide strategy to assist in special needs and homeless populations; directing the daily activities of a variety of housing programs; preparing grant applications; making recommendations for contract approval or rejection before various boards, commissions and public officials; and reviewing regulatory changes. As Project Contract Specialist, Ms. Lewis-Lilly was responsible for maintaining the City's compliance with federal housing grants. Ms. Lewis-Lilly was terminated on January 18, 2012.

## H.  Michael McKinley

Mr. McKinley had worked for the City for 32 years and worked as the Supervisor of Operations for Water Pollution Control at the time of his termination. He was responsible for maintaining continuing plant operations; monitoring plant performance in meeting water quality standards; ensuring compliance with the National Pollution Discharge Elimination System Permit and Indiana Department of Environmental Management and Environmental Protection Agency requirements; and responding to plant emergencies. Mr. McKinley was terminated on January 20, 2012.

## I.      Tim Stires

Mr. Stires had worked for the City for 20 years prior to his termination and held the position of Assistant Planning Director for Municipal Development.  His official job description included assisting with directing departmental operations; supervising and directing Planners; developing methodology in conducting special studies and research; responding to citizen inquiries regarding planning and zoning issues; attending various community board and commission meetings; assisting with reviewing and evaluating department programs, systems, and methods of operation; and performing the duties of the Planning Director in his/her absence. Plaintiffs argue that Mr. Stires' job duties were different than those described in his official job description due to a citywide reorganization during Mayor Smith's first term in office, following which the official job description was not revised to reflect the change.  On December 16, 2011, Mr. Stires received a letter from Mayor Smith informing him that his employment with the City would be terminated as of January 1, 2012.

## J.      Jeff Welker

Mr. Welker had worked for the City for 24 years and worked as the Building Superintendent for City Hall and other City buildings.  As Building Superintendent, Mr. Welker was responsible for directing all maintenance operations, including supervision of personnel; making decisions and recommendations to supervise and direct maintenance operations of City Hall's facility, grounds and related equipment; inspecting condition of building and grounds, and planning future improvement projects; evaluating equipment for maintenance, repairs, and/or replacement, and recommending purchases to the Board of Works; preparing annual budget requests and administering budget upon approval; and responding to emergencies.  Mr. Welker was terminated on January 20, 2012.

**K.**     **Robert Allman**

Mr. Allman worked as the Supervisor of Maintenance for the Department of Water Pollution Control.   As the Supervisor of Maintenance, Mr. Allman was responsible for supervising and performing maintenance operations; supervising and directing employees; overseeing the maintenance of the department's tools and computer programs; overseeing purchasing for the department; and proposing a budget to the Superintendent of the Department of Water Pollution Control.  Mr. Allman was terminated on January 25, 2012.

## II.     <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).   In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to defeat the motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).  "[N]either the mere existence of some alleged factual dispute between the parties . . . nor the existence of some metaphysical doubt as to the material

facts . . . is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III.  LEGAL ANALYSIS

**A.  Surreply and Response to Surreply**

Local Rule 56-1(d) permits a party opposing summary judgment to file a surreply if the moving party cites new evidence or objects to the admissibility of evidence cited in the response. Plaintiffs have properly limited their surreply to the new arguments and evidence cited in Defendants' reply, including new evidence and arguments regarding Ms. Lewis-Lilly's and Mr. Davis' positions, and to objections to Plaintiffs' evidence, namely Mr. Davis' sworn statement regarding his position at the time of his termination.  Dkt. 75.  However, there is nothing in the rule that permits the moving party to file a response to that surreply, which is what the Defendants have attempted to do at Docket 77.  *See Stevens v. Life Care Ctrs. of Am., Inc.*, No. 4:06-CV-79-SEB-WGH, 2008 WL 4443089, at *1 n.1 (S.D. Ind. Sept. 25, 2008) ("[N]either Federal Rule of Civil Procedure 56, nor Local Rule 56.1, provides for a response to a surreply. Furthermore, the Court is perfectly well-equipped to determine which facts and arguments in Plaintiffs' Surreply are, or are not, material to the dispute without the benefit of Defendant's response. . . .").  Therefore, Defendants' Response to Plaintiffs' Surreply (Dkt. 77) is hereby **STRICKEN** and will not be considered in deciding this Motion for Summary Judgment.

**B.  First Amendment Protections**

Under the First Amendment, a government employee may not be discharged on the basis of political affiliation, unless "political loyalty is 'essential to the discharge of the employee's governmental responsibilities.'"  *Tomczak v. City of Chi.*, 765 F.2d 633, 640 (7th Cir. 1985) (quoting *Branti v. Finkel*, 445 U.S. 507, 518 (1980)).  "[T]his could be either because the job

involves the making of policy and thus the exercise of political judgment or the provision of political advice to the elected superior, or because it is a job (such as speechwriting) that gives the holder access to his political superiors' confidential, politically sensitive thoughts." *Riley v. Blagojevich*, 425 F.3d 357, 359 (7th Cir. 2005) (citing *Elrod v. Burns*, 427 U.S. 347, 367-68 (1976); *Branti*, 445 U.S. at 518).   In general, employees who have merely ministerial duties with little discretion and employees whose discretion is channeled by professional rather than political norms are not within the exception. *Id.* at 360.

In order to determine whether a position is exempted as a policymaking or confidential position, courts must go beyond labels to consider the "nature of the responsibilities" of the position in question. *Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir. 1999). "[I]f there is no applicable statute or ordinance defining a position's duties, public officials may continue to rely solely on an official job description as a safe harbor to determine whether political affiliation is an appropriate qualification." *Davis v. Ockomon*, 668 F.3d 473, 478 n.1 (7th Cir. 2012).

The test is whether the position "authorizes, either directly or indirectly, meaningful input into governmental decision making on issues where there is room for principled disagreement on goals or their implementation." *Tomczak*, 765 F.2d at 641 (quoting *Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir. 1981)).   It is the job description, not the actual duties of the employee, that controls the determination of whether a job is one for which political affiliation is a permissible criterion.   The job description, if reliable, is the correct basis for the court's determination as to whether political affiliation is a legitimate requirement of the job, regardless of the actual duties performed by the employee. *Riley*, 425 F.3d at 364.

Generally, the question of whether a position is exempted from the First Amendment patronage dismissal ban is a factual one that should ordinarily be left for a jury to determine.

*Pleva*, 195 F.3d at 912. Only in limited cases where the duties and responsibilities of a particular position are clearly outlined in an official job description may a court make such a determination as a matter of law. *Id.* (citing *Warzon v. Drew*, 60 F.3d 1234, 1240 (7th Cir. 1995); *Heck v. City of Freeport*, 985 F.2d 305, 310 (7th Cir. 1993)). However, not every political patronage case can be resolved by just reading the job description, as "[t]he description might leave the reader unclear whether the job confers any policymaking or confidential discretion, and then additional evidence would be necessary." *Id.* at 365. In those instances, summary judgment would not be appropriate.

### 1. Reliability of job descriptions

The Defendants argue that the job descriptions in question have been in place for many years and have not been manipulated in order to justify removal of the Plaintiffs, thus they are reliable.

> For the job description to be the pivot on which the case turns, inquiry must focus on how the description was created; how it is updated and thus kept realistic rather than being allowed to drift far from the actual duties of the position; in short, on how reliable, how authoritative, the description is.

*Id.* at 361. The job descriptions in *Riley* were created and updated by the Illinois Department for Central Management Services and reviewed by the Civil Service Commission, both executive branch agencies, pursuant to Illinois statute and administrative code, and state law provided for public review and challenge by job holders if he or she believed the job description was inaccurate. *Id.* at 361-62. The job descriptions in this case were created and updated by an outside consulting firm, Waggoner, Irwin, Scheele & Associates, Inc., and there has been no evidence provided showing that the process of the creation or maintenance of job descriptions was subject to state law. However, it appears that the job descriptions in this case were created in such a manner that they could be regarded as "official" descriptions, as they were regularly

reviewed and maintained by an outside consulting firm and are based upon a job classification system developed by the U.S. Department of Labor and previously used by the City. *See* Dkt. 55. Plaintiffs have not disputed the accuracy of the process to create and revise job descriptions used by Waggoner, Irwin, Scheele & Associates, Inc. and the City, outlined in Addie Rooker's affidavit. Dkt. 55.

Plaintiffs do not argue that any of the job descriptions were manipulated by Mayor Smith, nor do they argue that the descriptions were "systematically unreliable" in general. Only Ms. Lewis-Lilly, Mr. Davis, Mr. Greene, and Mr. Stires have offered arguments that the job descriptions for their positions relied upon by the Defendants were unreliable. The reliability of each of these Plaintiffs' job descriptions will be addressed in turn.

### a.   Andrew Greene – Information Service Technician

With regard to Mr. Greene, Plaintiffs argue that his job description did not keep pace with the actual duties of his position as Information Service Technician. They point to the fact that one key consideration alleged by the Defendants in the decision to terminate Mr. Greene for political reasons—his access to enormous amounts of confidential information—was not part of his job description at the time he was terminated. This responsibility was not added to the official job description for the Information Service Technician until May 2012, three months after Mr. Greene had been terminated from the City. The original job description had last been revised in March 2005. Dkt. 55-8 at 1. The job description, as it existed at the time of Mr. Greene's termination, seems to involve purely professional and technical functions. The Plaintiffs argue that even if access to confidential information is properly considered as one of his job functions, such access still does not make his position exempt from First Amendment protections because he could only access confidential information when he was authorized to do

so.  At the very least, the parties have presented disputed questions of material fact as to the reliability of Mr. Greene's job description, particularly in light of the revision that occurred shortly after his termination, and whether such description gave him access to politically sensitive confidential information.  As such, summary judgment would not be appropriate on Mr. Greene's claim.

### b.   Amber Lewis-Lilly – Project Contract Specialist

Plaintiffs do not necessarily argue that Ms. Lewis-Lilly's job description is unreliable; they argue that the Defendants relied upon the wrong job description in their decision to terminate her.  While Defendants initially argued in their opening brief that Ms. Lewis-Lilly held a Contract Manager position that justified her termination, in their reply brief they concede that she actually held the Project Contract Specialist position, but that this position is also exempt from First Amendment protections, and that Mayor Smith would have terminated her anyway even if he had been aware of her correct position.

Defendants cite to *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977) in support of their argument that this is a complete defense to liability in this situation.  However, that case did not turn on whether the defendants had a mistaken belief about the position held by the plaintiff; rather, the Supreme Court held that where the plaintiff had satisfied the burden of showing that his conduct was constitutionally protected under the First Amendment and was a motivating factor in the defendant's decision not to rehire him, the district court should have gone on to determine whether the defendant had shown that it would have reached the same decision even in the absence of protected conduct.  *Mt. Health City Bd. of Ed.*, 429 U.S. at 285-86.  This case is distinguishable because the Defendants have not asserted any other reasons for terminating the Plaintiffs and have admitted that it was due to political considerations.

The Defendants have cited to no other case law that would support such a post hoc rationalization on summary judgment, as opposed to looking to what the Defendants relied upon at the time the termination decision was made.  This argument should be considered waived because it was raised for the first time in the reply brief.  *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996).  At the very least, the Court finds that there is a dispute of material fact as to what motivated Mayor Smith's decision to terminate Ms. Lewis-Lilly, making summary judgment on her claim inappropriate.

### c.  Gary Davis – Project Supervisor

Like Ms. Lewis-Lilly, Mr. Davis' argument is that the Defendants relied upon the incorrect job description in their decision to terminate him.  Defendants respond that Mr. Davis has not presented sufficient evidence that he held the Project Supervisor position, not the Manager of Operations position, and that all of his personnel records indicated that he held the position of Manager of Operations.  Defendants argue that Mr. Davis' testimony that he held the Project Supervisor position is "self-serving" and thus inadmissible.  However, Mr. Davis' statements regarding what position he held are based upon personal knowledge, and are not the type of self-serving testimony that is insufficient to create a genuine issue of fact on summary judgment.  *See Hill v. Tangherlini*, 724 F.3d 965, 967-68 (7th Cir. 2013) ("[T]he term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.").  In addition, Mr. Davis has provided evidence from his employment compensation hearing which states that he held the position of Project Supervisor at the time of his termination.  It appears that there is at least a question of material fact as to which position Mr. Davis held at the time of his termination, meaning that Defendants are not entitled to summary judgment on Mr. Davis' claim.

### d.  Tim Stires – Assistant Planning Director for Municipal Development

Plaintiffs argue that the job description for Mr. Stires was objectively unreliable; however, they offer no evidence that the description was inaccurate, only that the duties he performed had no input into government decision-making or were not politically sensitive. Thus, there appears to be no disagreement as to whether Mr. Stires held this position or that the description itself was unreliable, only whether the duties listed indicate that political affiliation was an appropriate requirement for the job.

### 2.  Whether job descriptions indicate confidential or policymaking job functions

None of the positions involved in this case are defined by statute or ordinance such that the Court can easily make a determination as a matter of law whether they are exempt from First Amendment protection.  As discussed above, it does appear that the job descriptions for each of the positions could be regarded as "official" even though they are not defined by law.  With the exception of Mr. Greene's position as Information Services Technician, there does not appear to be any evidence that the descriptions are systematically unreliable, only that Mayor Smith erroneously relied upon the incorrect job descriptions for two of the Plaintiffs in making the decision to terminate them.  Regardless of the reliability of the official job descriptions, not every *Elrod-Branti* case can be resolved just by reading the job descriptions.  *Riley*, 425 F.3d at 365.  "The description might leave the reader unclear whether the job confers any policymaking or confidential discretion, and then additional evidence would be necessary."  *Id.*  The Court must determine if it is clear from the job descriptions whether each Plaintiff held a job for which political affiliation is an appropriate prerequisite for effective performance.

### a. Robin Allman

Defendants do not argue that the Cashier position that Ms. Allman held at the time of her termination was exempt from the First Amendment; rather, they argue that she was improperly transferred into this position from her Officer Manager position, and that her position as Office Manager should be considered in determining whether her termination was proper.  Defendants cite to *Turner v. Burke*, No. 2:04-cv-00028-JDT-WGH, 2005 WL 4880621 (S.D. Ind. Oct. 25, 2005) in support of their argument.  In *Turner*, the court held that because the plaintiff had been transferred from a political position to a merit position due to political considerations and did not follow ordinary city procedures or policies, her transfer was unlawful and the defendants were proper in terminating her employment.  2005 WL 4880621, at *6.  In that case, upon receiving a letter that she would be terminated from her position as secretary to the police chief when the new mayor took office, the plaintiff drafted a letter for signature by the police chief which purported to transfer her to a merit position in the records department of the police department. She signature-stamped the police chief's name on the letter after calling him at home and getting his permission to do so.  She then drafted a second letter from herself to the mayor-elect informing him that she had been transferred to the records department so the new police chief could hire a secretary of his/her choice.  On the effective date stated in the letters, the plaintiff began to be paid from the records division payroll and began performing some duties as records clerk.  However, she also continued to work part-time in the police chief's office, where she retained her desk and a password to her computer, and continued to open the police chief's mail and answer the office telephone.  Approximately two weeks later she was visited by the mayor-elect at the police chief's office, and he reiterated that her employment with the city would be terminated effective January 1.  The court determined that the plaintiff was "unable to show that

16

she followed ordinary city procedures or policies for requesting and obtaining the transfer, as she merely called upon [the police chief] to sign a letter approving it." *Id.* The court also made note of the police department's routine practice of transferring secretaries to the records division upon changes in administration, regardless of the qualifications of the transferred employees, as evidence of its intent to avoid their termination by incoming political opponents. *Id.*

Ms. Allman's transfer to the Cashier position is clearly distinguishable from the transfer in *Turner*. In *Turner*, the case turned on the fact that the plaintiff did not follow official city procedures in applying for and obtaining her new position. Ms. Allman asserts that she bid on and was awarded a position that had been posted for several weeks and followed all proper procedures in obtaining the position. It does not appear that Ms. Allman relied upon any political favors in obtaining her new position, nor do Defendants offer evidence of such. At the very least, there is a question of material fact as to whether her transfer to the Cashier position followed the City's procedures, which would bear on the issue of whether her transfer was lawful.[1] However, it does appear that the position Ms. Allman held at the time of her termination – Cashier – was a purely ministerial job that would not be exempt from First Amendment protection. Therefore, further analysis is warranted on this claim.

### b. Margaret Baugher

Ms. Baugher held a lower level position as a Customer Service Supervisor in the City's Utility Department. She did not even report to the head of the department; she reported to the Assistant Manager. Ms. Baugher mainly interacted with co-workers and members of the general public, not high level city officials. Her main duties consisted of complying with department

---

[1] This also begs the question as to whether Ms. Allman's transfer/promotion back to the Office Manager position so that she could be terminated was itself an unlawful politically motivated transfer, in which case any merit employee could be transferred to a political position so they could be terminated, assuming that the merit position was lawfully obtained.

policies and rules, not developing such policies, and the information she was charged with keeping confidential was not politically sensitive information.  Unless there is additional evidence provided to the contrary at trial, it appears that Ms. Baugher's position falls outside of the exemption for First Amendment protection, thus summary judgment on her claim is not warranted.

### c.   Mark Baugher

Mr. Baugher was terminated from a Street Supervisor/Dispatcher position.  The Street Supervisor reported to the Director of Operations, who in turn reported to the General Manager. Defendants argue that he had discretionary responsibilities that are policy related functions. However, Mr. Baugher was not the head of his department, or even second in his department, and was merely responsible for planning bus routes and assuring compliance with traffic, safety and scheduling requirements, as well as responding to citizen complaints.  Without more, it does not appear that his position is exempt from First Amendment protections, and he at least has presented a question of material fact precluding summary judgment on his claim.

### d.   Kristie Binda

Ms. Binda's position as secretary to the Fire Chief is arguably a "confidential" position for which political loyalty may be a valid qualification, as the Seventh Circuit has held that "a policy-maker's confidential secretary, who herself had no policy-making powers, could be fired for lacking political loyalty; it is the kind of job in which such loyalty is important." *Shondel v. McDermott*, 775 F.2d 859, 864 (7th Cir. 1985) (citing *Soderbeck v. Burnett Cnty.*, 752 F.2d 285, 288 (7th Cir. 1985)).  However, not all policymakers are exempt from the First Amendment, nor are their secretaries.  *See Lohorn v. Michal*, 913 F.2d 327, 334 (7th Cir. 1990) (statute classifying position as "policymaking" does not make political affiliation an appropriate prerequisite as a

matter of law).  "While the Seventh Circuit and other courts previously have found the position of secretary to a policy-maker to be political, the Circuit has also stated that the inquiry is particularly fact intensive, and should not be guided merely by the job description of a position."  *Turner*, 2005 WL 4880621, at *7.   Defendants argue that Ms. Binda had access to extensive confidential information, while Ms. Binda asserts that her access to confidential information was limited and her job consisted of compiling information and typing.  Thus there appears to at least be a question of fact as to whether party affiliation is actually an appropriate requirement for the position of Fire Department Secretary, and summary judgment on Ms. Binda's claim must be denied.

### e.  Gary Davis

The parties dispute which position Mr. Davis actually held at the time of his termination, thus summary judgment on his claim is not appropriate.

### f.  Andrew Greene

The parties dispute the reliability of Mr. Greene's job description.  While typically the courts look solely to the job description and not the actual duties performed, the Plaintiffs have presented evidence that an audit done shortly after Mr. Greene was terminated resulted in a revision of the job description, suggesting that it was not reliable when Mr. Greene was terminated.   Also, the "access to confidential information" description upon which the Defendants rely upon in arguing that his position was politically sensitive was not added until after Mr. Greene was terminated.  However, it still does not appear likely, based upon the job description for Information Services Technician, that Mr. Greene held a politically sensitive position because his discretion was primarily professionally based, not political.  *See Riley*, 425

F.3d at 360.  Construing the facts in light most favorable to Mr. Greene, there are questions of fact that make summary judgment inappropriate on his claim.

### g.   Amber Lewis-Lilly

The parties dispute the actual position held by Ms. Lewis-Lilly at the time of her termination.  Defendants attempt to argue that both of the positions in question are exempt from First Amendment protection, and that Mayor Smith would have terminated her anyway had he known of her correct position.  Defendants cite to no cases in which a defendant that relied upon the incorrect job description was successfully able to argue that he would have terminated the employee anyway.  The case cited relates to allegations of termination for a reason other than political patronage.  The question of fact regarding which position Ms. Lewis-Lilly held and whether Mayor Smith would have terminated her if he had known of her correct position makes summary judgment inappropriate.

### h.   Michael McKinley

The Supervisor of Operations position is one which may require additional evidence in order to determine whether the position exercises sufficient decision-making authority to be considered politically sensitive.  The position seems to involve more technical/professional discretion rather than political discretion; however, Mr. McKinley did report directly to the Superintendent and performed the Superintendent's duties in his absence.  Due to these questions of material fact, summary judgment is not warranted.

### i.   Tim Stires

Because Mr. Stires has not shown that the job description was unreliable (as discussed above), the Court can look to the official job description for the Assistant Planning Director of Municipal Development to determine whether it indicates that political loyalty is a valid

qualification for the job, or whether more evidence is needed to make the determination.  Several of Mr. Stires' job duties seem to indicate that political loyalty was a valid qualification for his position, including providing consultation and coordinating the development and implementation of the City's comprehensive plans; maintaining public relations for the department; presenting and defending major policy recommendations; maintaining confidential information to "cope with unprecedented types of problems by extending accepted planning methods and techniques;" and the position requires "exercising considerable independence of judgment in directing department operations and staff, and in evaluating various programs and processes."  Dkt. 55-11 at 2.

Defendants cite to *Garrison v. City of Calumet City, Ill.*, 450 F. Supp. 2d 869, 876-77 (N.D. Ill. 2006) as a comparison to this case, stating that an Economic Development Coordinator who was responsible for promoting and attracting business to the city and work with current businesses on the redevelopment of the business or expansion was found to not be protected by the First Amendment.  In that case, however, the job description was found in the Calumet City Code; the employee was the highest ranking in the department; he reported to the mayor and worked with many high level officials; he prepared the department budget and had the discretion to spend within that budget; and he was appointed by the mayor and by Illinois law, his term could not exceed that of the mayor.  *Id.* at 876.  In contrast, there is no indication that the Assistant Planning Director was an appointed position; he was not the head of the Planning Department and instead reported directly to the Planning Director; and he performed duties according to "customary routines and department objectives and policies" in order to further the goals of the department.

Viewing all of these considerations in light most favorable to Mr. Stires, it appears that more evidence is needed in order to determine whether the inherent powers of the office are such that political loyalty is a valid qualification.  This is not like the cases in which the official job description was set by statute or ordinance, or where Mr. Stires was the highest ranking employee in the department.  However, it does appear that he exercised some functions which arguably had meaningful input into governmental decision-making.  It does not seem that this decision can be made as a matter of law based upon the evidence as currently presented, thus summary judgment should not be granted on Mr. Stires' claim.

### j.  Jeff Welker

Mr. Welker arguably held a politically sensitive position, as the Building Superintendent reported directly to the Chairman of the Board of Works.  The Building Superintendent was responsible for creating a budget for the City Hall Maintenance Department and had the discretion to administer the budget, and he was responsible for making short and long range building maintenance plans.  However, it is questionable as to whether keeping the City's facilities well-maintained requires political loyalty as a qualification.  Additional facts are necessary in order to make this determination; thus, summary judgment is not appropriate on Mr. Welker's claim.

### k.  Robert Allman

Although a job description for the Supervisor of Maintenance for the Department of Water Pollution Control was provided by Plaintiffs, the description does not indicate when it was created or revised.  Thus, it would be impossible for the Court to determine whether this job description is accurate or reliable for purposes of the safe harbor provision set forth in *Riley*. Defendants cite Dkt. 54-2 (Exhibit O) as the job description for this position; however, this is a

22

copy of a newspaper article, not the job description.  This creates an issue of material fact because neither party has provided a job description from which the Court can make the determination as to whether Mr. Allman had sufficient decision-making duties to be considered a political appointee, thus summary judgment should not be granted.

## C.     Qualified Immunity

The final issue is whether Mayor Smith is individually protected from liability by qualified immunity.  "Government officials performing discretionary functions are entitled to qualified immunity from suit 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 352 (7th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  In addition to alleging facts that, if true, would constitute a violation of a constitutional right, the Plaintiffs must show that the case law was "clearly established" at the time of the alleged violation, so that a reasonable public official would have known that his conduct was unlawful. *Id.*  A plaintiff is not required to find a factually indistinguishable case on point, but if there is no such case, he needs to offer a different explanation for why the constitutional violation is obvious.  *Moss v. Martin*, 614 F.3d 707, 712 (7th Cir. 2010).  Plaintiffs cannot rely upon the broad proposition that the First Amendment protects against certain political patronage firings; they must instead show that the violation was clear in the specific context of the case.  *Id.*

Plaintiffs offer specific explanations for why the alleged constitutional violations were obvious for only two of the employees, Robin Allman and Margaret Baugher.  With regard to Ms. Allman, they allege that Mayor Smith's actions in "promoting" her from the Cashier position back to the Office Manager position in order to terminate her shows "recklessness and a disregard of the law."  The fact that Mayor Smith "promoted" Ms. Allman back to the Office

Manager position solely for the purpose of terminating her implies that he was aware that terminating her directly from her Cashier position would have violated the First Amendment because it is a low-level, ministerial position.  In addition, Plaintiffs argue that there is no reasonable basis for believing that Ms. Baugher's position as a Customer Service Supervisor required political loyalty.  "The Seventh Circuit has held that the case law has 'made clear that an employee who performs primarily ministerial functions and who has little autonomy or discretion in performing his duties is not subject to patronage dismissal.'"  *Allen v. Elgin*, No. 2:04-CV-001 PS, 2006 WL 3314557 (N.D. Ind. Nov. 9, 2006) (quoting *Flenner v. Sheahan*, 107 F.3d 459, 463 (7th Cir. 1997)).  As discussed  in more detail above, it does appear that these two arguments have merit because the Cashier and Customer Service Supervisor positions are clearly ministerial functions, thus qualified immunity should not apply to Ms. Allman's and Ms. Baugher's claims.

With regard to the remaining nine employees, Plaintiffs argue that evidence that Mayor Smith violated a clearly established right by terminating those employees includes their status as Non-Exempt FLSA employees; lack of evidence that Mayor Smith actually relied upon the job descriptions in his decision to terminate the employees at issue; and the fact that Mayor Smith was not even aware of the actual positions held by Mr. Greene and Ms. Lewis-Lilly.  However, the Seventh Circuit has recognized that there is great inconsistency in the area of patronage law. "[B]etween the strictly menial government worker (who, under *Elrod* and *Branti,* is clearly and completely protected from patronage firing) and the policymaker/confidential assistant (whose protection from patronage firing is non-existent), there is a range of government positions for which the propriety of patronage firing has depended largely on the courts' juggling of competing constitutional and political values." *Flenner v. Sheahan*, 107 F.3d 459, 465 (7th Cir.

1997).   It appears that the remaining nine positions fall somewhere in the middle of this spectrum.  The Plaintiffs rely heavily on the remaining Plaintiffs' status as non-exempt under the FLSA; however, they do not cite to any cases in which FLSA exemption status is conclusively indicative of whether employees are or are not exempt from First Amendment protection. Indeed, it could be entirely possible for an employee who is non-exempt under the FLSA, such as a secretary or a speech writer, to still be exempt from First Amendment protection because of his or her access to confidential information.

The Court concludes that qualified immunity applies to Mayor Smith for all of the Plaintiffs' claims with the exception of Ms. Allman's and Ms. Baugher's.  Therefore, summary judgment on Mayor Smith's qualified immunity defense is **GRANTED in part** and **DENIED in part**.

## IV.    CONCLUSION

Defendants have not demonstrated as a matter of law that any of the Plaintiffs worked in a position where political loyalty was a valid qualification for employment. Therefore, summary judgment is **DENIED** on each Plaintiff's claims that they were terminated in violation of the First Amendment.  On the issue of qualified immunity, the Court finds that the Defendants' motion is **GRANTED** as to Mark Baugher, Kristie Binda, Gary Davis, Andrew Greene, Amber Lewis-Lilly, Michael McKinley, Tim Stires, Jeff Welker and Robert Allman, and **DENIED** as to Robin Allman and Margaret Baugher.

**SO ORDERED**.

Date: ___03/13/2014___


_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

25

DISTRIBUTION:

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Jeffrey A. Macey
MACEY SWANSON AND ALLMAN
fmacey@maceylaw.com

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

Richard Bruce Walker
walkerlaw8@gmail.com