UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBIN ALLMAN, MARGARET BAUGHER, MARK BAUGHER, KRISTIE BINDA, GARY DAVIS, ANDREW GREENE, AMBER LEWIS-LILLY, MICHAEL MCKINLEY, TIM STIRES, JEFF WELKER, and ROBERT ALLMAN, <br><br> Plaintiffs, <br><br> v. <br><br> KEVIN SMITH, in his individual capacity and in his official capacity as Mayor of the City of Anderson, and the CITY OF ANDERSON, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) Case No. 1:12-cv-00568-TWP-DML ) ) ) ) ) ) |

### ENTRY ON DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR ALTERNATIVE MOTION FOR A NEW TRIAL

Before the Court is a Motion for Judgment as a Matter of Law filed pursuant to Federal Rule of Civil Procedure 50 by Defendants Kevin Smith (former- "Mayor Smith") and the City of Anderson ("the City") (collectively, "Defendants"). (Filing No. 214.) In the alternative, Defendants move the Court for a new trial because key jury instructions were unfairly prejudicial. *Id.* After termination of their employment by Defendants, Plaintiffs Robin Allman ("Ms. Allman"), Margaret Baugher ("Ms. Baugher"), Mark Baugher ("Mr. Baugher"), Kristie Binda ("Binda"), Gary Davis ("Davis"), Andrew Greene ("Greene"), Amber Lewis-Lilly ("Lilly"), Michael McKinley ("McKinley"), Tim Stires ("Stires"), Jeff Welker ("Welker"), and Robert Allman ("Mr. Allman") (collectively, "Plaintiffs") sought relief in this Court. (Filing No. 22.) Plaintiffs filed this action alleging Defendants terminated them for engaging in political activity protected by the First Amendment. Following a trial held on March 15, 2016 through March 21, 2016 on Plaintiffs'

First Amendment claims, a jury found in favor of certain Plaintiffs and entered a verdict for compensatory damages. ([Filing No. 169](#).) For the following reasons, the Court **DENIES** Defendants' Motion for Judgment as a Matter of Law and **DENIES** the alternative Motion for a New Trial.

## I. BACKGROUND

In November 2011, Kevin Smith, a Republican, was elected Mayor of Anderson, Indiana, and his term began on January 1, 2012. Shortly prior to or immediately following the beginning of Mayor Smith's term, the Plaintiffs—all City employees—were terminated. Each of the Plaintiffs' publically supported the Democratic candidate in the November 2011 election. On October 23, 2012, Plaintiffs filed an Amended Complaint, alleging Defendants improperly terminated them for political reasons in violation of the First Amendment of the United States Constitution. ([Filing No. 22](#).) On August 1, 2013, Defendants filed a Motion for Summary Judgment, arguing each Plaintiffs' position required political loyalty, thus exempting Plaintiffs from First Amendment protection. The Court granted in part and denied in part Defendants' request for summary judgment. ([Filing No. 79 at 25](#).) The Court specifically found that a material issue of fact remained regarding whether Plaintiffs' positions required political loyalty. *Id.* The Court, however, granted Mayor Smith's motion for summary judgment on the issue of qualified immunity with respect to Mr. Baugher, Binda, Davis, Greene, Lilly, McKinley, Stires, Welker and Mr. Allman. *Id.* The Court denied summary judgment on the qualified immunity issue as to Ms. Allman and Ms. Baugher. *Id.*

On Monday, March 14, 2016, a jury trial commenced regarding: 1) Plaintiffs' First Amendment claim against the City, 2) Ms. Allman's and Ms. Baugher's First Amendment claim against Mayor Smith, as well as 3) Defendants' defense that they terminated each Plaintiff for

nonpolitical reasons, but—even if they terminated Plaintiffs for political reasons—each Plaintiff held positions unprotected by the First Amendment. At the close of evidence and prior to the Court submitting the case to the jury, Defendants renewed a motion for judgment as a matter of law with respect to each Plaintiff. The Court granted in part and denied in part the motion. ([Filing No. 163](#).) The Court specifically found that Mayor Smith was entitled to qualified immunity with respect to Ms. Baugher's claim, however, the remaining claims were left for the jury to determine.

Following deliberations, the jury returned a verdict in favor of Mr. Baugher, Binda, Davis, Greene, McKinley, Stires, Welker and Ms. Allman for a total of $731,994.00 in compensatory damages. ([Filing No. 169](#).) The jury, however, ruled in favor of Defendants with respect to claims alleged by Lilly, Mr. Allman, and Ms. Baugher. *Id.* On March 31, 2017, the Court entered a final judgment in accordance with the jury's verdict. ([Filing No. 207](#).) The Defendants timely requested judgment as a matter of law under Federal Rule of Civil Procedure 50(b), notwithstanding the verdict. ([Filing No. 214](#).) Defendants assert only that Plaintiffs' positions required political loyalty. In the alternative, Defendants contend they are entitled to a new trial under Federal Rule of Civil Procedure 59 because two key jury instructions were erroneous and unfairly prejudiced them.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 50(b)

Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. In deciding a Rule 50 motion, the court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence.

*Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012) (citations and quotation marks omitted).

> Under Rule 50, both the district court and an appellate court must construe the facts strictly in favor of the party that prevailed at trial. Although the court examines the evidence to determine whether the jury's verdict was based on that evidence, the court does not make credibility determinations or weigh the evidence.

*Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011) (citations omitted). If a Rule 50(a) motion for judgment as a matter of law is made at the close of evidence and is not granted, the moving party may renew the motion no later than twenty-eight days after the entry of judgment. Fed. R. Civ. P. 50(b).

**B.** **Federal Rule of Civil Procedure 59**

Under Rule 59, the district court has broad discretion to grant or deny a new trial. The court considers whether the verdict is against the weight of the evidence, the damages are excessive, or the trial was not fair to the moving party. *Marcus & Millichap Inv. Servs. of Chi., Inc. v. Sekulovski*, 639 F.3d 301, 313 (7th Cir. 2011). Parties seeking a new trial under Rule 59 "bear a particularly heavy burden because a court will set aside a verdict as contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict." *Sekulovski*, 639 F.3d at 314. "Rule 59(a) is not intended to allow parties to merely relitigate old matters or to present the case under new theories; rather, a motion for a new trial not predicated on the discovery of new evidence is intended to correct manifest errors of law or fact." *Int'l Paper Co. v. Androscoggin Energy LLC*, 2005 U.S. Dist. LEXIS 22066, at *8 (N.D. Ill. Sept. 30, 2005).

### III. DISCUSSION

Defendants move for judgment as a matter of law, arguing—based on the evidence presented at the summary judgment stage and trial—Plaintiffs occupied positions not protected by the First Amendment. In the alternative, Defendants request a new trial, to correct a manifest error

4

of law. Defendants argue the Court's instruction on the burden of proof was contrary to Seventh Circuit precedent and the Court's instruction on the issue of whether Plaintiffs occupied positions where they had "meaningful input into governmental decision-making" failed to adequately define those terms. Each issue is addressed in turn.

A. **Judgment as a Matter of Law based on Summary Judgment Rulings**

In pretrial motions, Defendants sought summary judgment on the Plaintiffs' claims alleging that the written job descriptions for Plaintiffs' positions identified duties that placed them outside of the First Amendment based on the "provisional safe harbor" for elected officials described in *Riley v. Blagojevich*, 425 F.3d 357, 360-61 (7th Cir. 2005). The Court denied summary judgment, in part, finding it would be impossible for the Court to determine whether certain job descriptions were accurate or reliable for purposes of the safe harbor provision set forth in *Riley*. Defendants contend the Court erred in denying their motion for summary judgment with respect to Stires, Welker, and McKinley because—based on their job descriptions—those Plaintiffs occupied sensitive, policy-making positions.

The Court, declines to address this contention because a party may not "appeal an order denying summary judgment after a full trial on the merits." *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011) ("May a party…appeal an order denying summary judgment after a full trial on the merits? Our answer is no"). "Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion." *Id.* Accordingly, because Defendants rely solely on the summary judgment record in making this argument, the Court **denies** Defendants' request for judgment as a matter of law on this issue.

## B. Judgment as a Matter of Law based on Trial Evidence

Defendants next argue that the evidence presented at trial mandates entry of judgment against all Plaintiffs because each Plaintiff occupied a position that required political loyalty. Under the First Amendment, a government employee may not be discharged on the basis of political affiliation, unless "political loyalty is 'essential to the discharge of the employee's governmental responsibilities.'" *Tomczak v. City of Chi.*, 765 F.2d 633, 640 (7th Cir. 1985) (quoting *Branti v. Finkel*, 445 U.S. 507, 518 (1980)).

> [T]his could be either because the job involves the making of policy and thus the exercise of political judgment or the provision of political advice to the elected superior, or because it is a job (such as speechwriting) that gives the holder access to his political superiors' confidential, politically sensitive thoughts.

*Riley v. Blagojevich*, 425 F.3d 357, 359 (7th Cir. 2005) (citing *Elrod v. Burns*, 427 U.S. 347, 367-68 (1976); *Branti*, 445 U.S. at 518).

When determining a Rule 50(b) motion, courts must review the record as a whole and "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1018 (7th Cir. 2016) (citations omitted). Moreover:

> the court must disregard all evidence favorable to the moving party that the jury is not required to believe. ... That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

*Id.* (citations omitted). The Court will address the trial evidence with respect to each Plaintiff.

### 1. Stires

During trial, Stires testified that as an Assistant Planning Director for Municipal Development he performed a broad range of duties, including: 1) gave input into the development and implementation of the City's comprehensive plan; and 2) attended various board and

6

commission meetings—specifically: Plan Commissioner, Board of Zoning Appeal, and the City Council meetings. (Filing No. 188 at 279-283.) Defendants contend that economic development was Mayor Smith's top priority and, as such, Stires' testimony underscores that he maintained a policy-making role that required political loyalty.

In response, Plaintiffs assert Defendants' argument is without merit because Mayor Smith testified that he terminated Stires for performance reasons, rather than political reasons. (Filing No. 187 at 134-135.) Plaintiffs also note the jury heard substantial evidence that Stires was not a policy-making employee, but that Stires' chief duty was handling inquiries from the public about zoning regulations and explaining the City's zoning rules. (*See* Filing No. 188 at 237.) Plaintiffs point to Stires' testimony that he never met or talked to the Mayor about economic development and that he reported to the Director and the Director, rather than Stires, briefed the Mayor. *Id.* at 271. Stires also testified that, although he had input regarding certain developments, his subordinates and the zoning administrator had input as well. *Id.* at 188. Plaintiffs note that this evidence is relevant because, despite their input, the City does not dispute that the zoning administrator is not a political appointee.

The Court finds, when drawing all reasonable inferences in favor of the Plaintiffs, the jury had a legally sufficient evidentiary basis to enter a verdict in favor of Stires. *See Gracia*, 842 F.3d at 1019. Stires testified that he was an employee who applied and explained existing policy—rather than a policy-making employee. The Court finds that this testimony alone is a sufficient basis for a jury to conclude that the safe harbor under the First Amendment did not apply. Accordingly, the Court **denies** Defendants' Motion regarding Stires.

## 2. Welker

The jury heard testimony that Welker had been working in Maintenance at City Hall since 1988 doing carpentry, fixing lights, maintaining heating and cooling systems, and doing other routine maintenance. At the time of his termination, he was the Building Superintendent. As Superintendent, he supervised the work activities of six employees, but continued to work shoulder to shoulder with the day shift employees, performing regular maintenance duties along with them. (Filing No. 190 at 162-163.) Welker testified that, as the Building Superintendent for City Hall, he: 1) reported directly to the Board of Works; 2) attended department head meetings with the Mayor; 3) participated in budget meetings; 4) represented the department at City Council meetings; and 5) made recommendations to the Board of Works when major purchases needed to be made. (Filing No. 190 at 159; 202-204.) Defendants argue that Welker's access to the Mayor and his control over budgets placed him outside the First Amendment protections.

In response, Plaintiffs argue, although Welker sat in on meetings between department heads and Mayor Smith, Welker did not maintain a policy-making position. Plaintiffs point to Mayor Smith's testimony that, with respect to Welker's position, it did not matter whether Welker supported Mayor Smith or not because Welker worked with his hands. (*See* Filing No. 187 at 160-61.) Plaintiffs contend, because Welker's job required only professional skill, rather than political judgment, the jury had substantial evidence to find that Welker's position was protected by the First Amendment.

The Court agrees with Plaintiffs and finds, in light of Mayor Smith's testimony that political affiliation did not matter because Welker worked with his hands, the jury had a legally sufficient evidentiary basis to find for the Plaintiffs on this issue. *See Gracia*, 842 F.3d at 1019;

*see also Tomczak*, 765 F.2d at 640 (citations omitted). Accordingly, the Court **denies** Defendants' Motion regarding Welker.

### 3. McKinley

McKinley testified, as Supervisor of Operations for the Water Pollution Control, he resolved union grievances that sometimes affected how efficiently the government ran. Defendants argue, as such, McKinley's position lacked protection under the First Amendment.

In response, Plaintiffs first note that Mayor Smith testified McKinley was not terminated because he was in a position that required political loyalty. ([Filing No. 187 at 155](#).) Plaintiffs also argue that McKinley's involvement in resolving grievances did not amount to policy-making authority because McKinley worked at step two of the grievance procedure. *Id*. at 233. This means that McKinley reviewed the grievance after it was presented to the foreman, but before the Board of Works reviewed the grievance. *Id.* Nara Manor ("Manor"), McKinley's supervisor, testified that she also reviewed McKinley's positions on the grievances and corrected any decision she disagreed with. *Id.* at 38.

The Court concludes, based on Manor and McKinley's testimony that McKinley did not have the final say in the grievance process and Manor reviewed McKinley's position regarding each grievance, the jury had a legally sufficient evidentiary basis to find for the Plaintiffs on this issue. *See Gracia*, 842 F.3d at 1019; *see also Tomczak*, 765 F.2d at 640 (citations omitted). Accordingly, the Court **denies** Defendants' Motion regarding McKinley.

### 4. Binda

Defendants argue that the Court erred when denying summary judgment with respect to Binda's claim because, at that stage, Defendants established Binda—as Secretary to the Chief of the Fire Department—was unprotected by the First Amendment. *See Meeks v. Grimes*, 779 F.2d

417, 422–23 (7th Cir. 1985) ("This situation arises in the context of the intimate working environment; it is here that a non-confidential non-policymaking employee can work in such a close relationship with the elected official that animosity arising from political opposition can create an untenable job situation"); *Turner v. Burke*, No. 204CV-00028-JDT-WGH, 2005 WL 4880621, at *6 (S.D. Ind. Oct. 25, 2005) ("an elected official's secretary is a position for which political affiliation is required due, in part, to the close and confidential relationship which exists between the official and his personal secretary"). The Court again declines to address Defendants' argument because a party may not "appeal an order denying summary judgment after a full trial on the merits." *Ortiz*, 562 U.S. at 184.

Defendants also argue they established at trial that Binda maintained access to confidential information, noting Binda typed letters and saw drafts of budgets. Defendants contend that this alone leaves Binda unprotected under the First Amendment. In response, Plaintiffs assert the jury heard substantial evidence that Binda did not maintain a confidential, political position. Binda testified that she worked for the entire Fire Department, rather than just the Chief. ([Filing No. 190 at 48](#).) Binda did not have access to the Chief's email account or computer, nor did she have any access to locked file cabinets where disciplinary records were stored. *Id.* at 48, 77-8. The Plaintiffs also point to Binda's testimony that, although she typed up the changes made to the budget by the Chief and Deputy Chiefs, anyone with access to the City's billing system could readily access the budget. *Id.* at 53-55.

The Court finds that it was not unreasonable for the jury to deny Defendants' defense of "confidential relationship," based purely on Binda's testimony that she did not maintain any exclusive, confidential access to the Chief of the Fire Department. *See Gracia*, 842 F.3d at 1019;

*see also Tomczak*, 765 F.2d at 640 (citations omitted). Accordingly, the Court **denies** Defendants' Motion on regarding Binda.

     5.     <u>**Mr. Baugher**</u>

Defendants also assert the Court erred when denying Defendants' Rule 50 Motion with respect to Mr. Baugher's claim because, as a City of Anderson Transportation System supervisor, Mr. Baugher designed and eliminated bus routes. ([Filing No. 188 at 44](#).) Defendants contend that the design and implementation of bus routes were important to Mayor Smith's economic development goals for the City and, as such, Mr. Baugher maintained a policy making position. ([Filing No. 192 at 111-112](#).)

Plaintiffs argue that Defendants' assertion is without merit because Stephon Blackwell, Mr. Baugher's supervisor, testified that Mr. Baugher did not maintain a policy making position that required political loyalty. ([Filing No. 188](#) 148-49) (noting Mr. Baugher did not need to be a Democrat or Republican to effectively perform his job). In addition, Blackwell testified that with regards to "designing routes and working with business leaders" the Mayor looked to Blackwell "to get it done" and "that was my responsibility." ([Filing No. 188 at 168](#).) Accordingly, based on Stephon Blackwell's testimony, the Court concludes that the jury had a legally sufficient evidentiary basis to deny Defendants' defense on this issue. *See Gracia*, 842 F.3d at 1019; *see also Tomczak*, 765 F.2d at 640 (citations omitted); *Allen v. Martin*, 460 F.3d 939, 944 (7th Cir. 2006) ("public employee may be dismissed on the basis of their political affiliation where the 'nature of his job makes political loyalty a valid qualification' for the effective performance of their position") (citations omitted). Accordingly, the Court **denies** Defendants' Motion regarding Mr. Baugher.

### 6. <u>Greene</u>

Defendants assert that Green maintained a position of trust because, as an IT professional for the City, he had access to virtually all electronically stored information within the City's government. This included access to the Mayor's computer, mobile devices, and email accounts. Defendants argue that, as such, the Court erred in denying their Rule 50 motion because Greene was a confidential employee—unprotected by the First Amendment. *See Riley*, 425 F.3d at 359 (noting, "a public official cannot be fired on the basis of his political affiliation unless the nature of his job makes political loyalty a valid qualification; this could be…because it is a job (such as speechwriting) that gives the holder access to his political superiors' confidential, politically sensitive thoughts").

In response, Plaintiffs do not dispute that Greene had "access to seeing things that are confidential" when helping superiors "resolve an issue with their mailbox" ([Filing No. 190 at 99](#)), however, Plaintiffs assert Greene did not have any unique access to the political decision-making of his superiors. *See id.* at 98.

The Court finds that the jury's verdict in favor of Plaintiffs on this issue is not unreasonable. "The ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that *party affiliation is an appropriate requirement for the effective performance of the public office involved*." *Branti v. Finkel*, 445 U.S. 507, 518 (1980) (emphasis added). The jury heard substantial evidence that party affiliation is not required for the effective performance of Greene's position as an IT professional. Pam Stafford, Greene's former supervisor, testified that Mayor Smith's first administration hired Greene—despite the differences in political affiliation. ([Filing No. 190 at 89](#).) The jury also heard testimony that Greene and several other employees had the same system

administrator access to the City's servers. ([Filing No. 190 at 93](#).) His duties were first and foremost system administration duties, followed by duties to the web site and then his help desk duties. Additionally, Defendants presented no evidence that Greene's party affiliation must align with Mayor Smith's to effectively perform his administrative duties, website duties, or help desk duties. Accordingly, the Court **denies** Defendants' Motion regarding Greene.

### 7. **Ms. Allman**

Regarding Ms. Allman, the only issue before the jury was "whether Allman properly occupied a cashier's position." *See Allman v. Smith*, 790 F.3d 762, 764 (7th Cir. 2015). Defendants rely on the testimony of Linda Wiley ("Wiley") when contending Ms. Allman's placement in the cashier position—after learning of her impending termination from her job as an Office Manager—was in violation of City policies. ([Filing No. 192 at 150](#)). As such, Defendants argue Ms. Allman did not properly obtain the cashier's position.

In response, Plaintiffs argue that Ms. Allman's testimony contradicts Wiley's testimony. Ms. Allman testified that she followed the "transfer policy" outlined in the Personnel Handbook when voluntarily transferring to the Cashier's Department after receiving notice of her imminent termination. ([Filing No. 187 at 57](#).) Section 4.2 of the Handbook states that "Employees must notify Personnel Department of their desire to make a transfer" and "all interviews must be arranged through the Personnel Department." *Id.* Ms. Allman informed Wiley—who worked in the Personnel Department—of her desire to voluntarily transfer to the Cashier's Department. *Id.* at 66. Ms. Allman was then interviewed and obtained the position.

When drawing all reasonable inferences in favor of Plaintiffs and disregarding the contradicted evidence favorable to Defendants that the jury is not required to believe, the Court finds reasonable the jury's verdict in favor of Ms. Allman. *See Gracia*, 842 F.3d at 1018 (citations

13

omitted). Accordingly, because the jury was not required to believe Wiley's testimony, the Court **denies** Defendants' Motion regarding Ms. Allman.

### 8. Davis

There is no dispute that, as a low-level Project Manager, Davis' position did not fall under any of the political affiliation exceptions to the First Amendment. Defendants, however, contend that they mistakenly thought Davis worked as a Manager of Operations for the Anderson Water Utility when terminating Davis because Davis previously worked in that position. Defendants presented evidence that there was no record of Davis' demotion and rely on *Heffernan* when arguing that the only question before the jury was whether Defendants reasonably believed Davis worked as a Manager of Operations when terminating Davis. *See Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1418 (2016) (holding an employee who was not engaged in any First Amendment activity, may challenge an employer's demotion under the First Amendment "and 42 U.S.C. § 1983—even if, as here, the employer makes a factual mistake about the employee's behavior").

> [T]his Court determined that the employer's motive, and particularly the facts as the employer reasonably understood them, mattered in determining that the employer had not violated the First Amendment. The government's motive likewise matters here, where respondents demoted [plaintiff] on the mistaken belief that he *had* engaged in protected speech.

*Id.* at 1414–15.

The Court first finds Defendants' reliance on *Heffernan* misplaced. Unlike the plaintiff in *Heffernan*, Davis not only engaged in political activity protected by the First Amendment, but also maintained a position protected by the First Amendment. Even if *Heffernan* applies and the question is whether Defendants believed Davis worked as a Manager of Operations, the jury had a legally sufficient evidentiary basis for their verdict. Davis testified that prior to his termination

14

he informed a member of Mayor Smith's transition team that he was a Project Supervisor. (Filing No. 189 at 191-192.) Tom Brewer—Davis' former supervisor—also testified that Davis' demotion was well-known and that Mayor Smith would have learned that Davis was a Project Supervisor had Mayor Smith's transition team asked anyone in the Water Utility Department. *Id.* at 113. Accordingly, the Court **denies** Defendants' Motion regarding Davis.

## C.     New Trial

The Court now considers Defendants' contention that a new trial is warranted because the Court allowed the jury to receive two erroneous and unfairly prejudicial jury instructions. To win a new trial based on an erroneous jury instruction, Defendants must show: 1) "the instructions did not adequately state the law", and 2) "the error was prejudicial to them because the jury was likely to be confused or misled." *Boyd v. Illinois State Police*, 384 F.3d 888, 894 (7th Cir. 2004) (denying a new trial because plaintiffs did not demonstrate prejudice from the supplemental instruction) (citations omitted). An erroneous jury instruction is prejudicial only when "considering the instructions as a whole, along with all of the evidence and arguments, the jury was misinformed about the applicable law." *Id.*

### 1.     Burden of Proof Instruction

Defendants first take issue with Final Jury Instruction No. 16, which states in pertinent part:

> If you decide that one or more of the Plaintiffs have proven that their support of Mayor Ockomon and/or the Democratic Party was *a motivating factor* in their termination and that the City of Anderson has not proven that it would have made the same decision anyway, you should decide with respect to those Plaintiffs whether the Defendants proved by a preponderance of the evidence that each of those Plaintiffs served in a position for which political affiliation was a valid qualification for continued employment.

(Filing No. 165 at 17) (emphasis added). Defendants rely on *Kidwell v. Eisenhauer* when asserting Final Instruction No. 16 amounts to a misstatement of law because the "but-for causation" test

15

applies, rather the "motivating factor" test. 679 F.3d 957, 965 (7th Cir. 2012) (noting, at the summary judgment stage the motivating factor test applies, however, the but-for standard applies at trial).

Despite Defendants' reliance on *Kidwell*, the Court finds Final Instruction No. 16 proper because the motivating factor test—rather than the but-for standard—applies. To prevail on a First Amendment claim, Plaintiffs must establish that their conduct was: 1) constitutionally protected, and 2) a motivating factor in Defendants' actions. *Simstad v. Scheub*, 816 F.3d 893, 900 (7th Cir. 2016) (affirming District Court's ruling on a Rule 50 motion that no reasonable jury could find plaintiffs' exercise of their First Amendment rights was a motivating factor in defendants' actions); *see also Mays v. Springborn,* 719 F.3d 631, 634 (7th Cir. 2013) (noting, "the jury should have been instructed that the plaintiff had the burden of proving that retaliation was a motivating factor"). Accordingly, because more recent opinions contradict the language in *Kidwell*, the Court **denies** Defendants' Motion on this issue.

### 2. "Occupied Positions" Instruction

Defendants also take issue with Final Instructions No. 17 and 18. In Final Instruction No. 17 the Court instructed the jury that:

> In order to decide whether political affiliation is an appropriate requirement for a plaintiff's position, you must decide whether his or her position offered the Plaintiff an opportunity for meaningful input into governmental decisionmaking or gave the position holder access to his or her political superiors' confidential, politically sensitive thoughts. Meaningful input into government decisionmaking involves the making of policy and thus the exercise of political judgment or the provision of political advice to the position's elected superior.

([Filing No. 165 at 18](#)). Final Instruction No. 18 explains:

> Positions requiring the exercise of professional and policy making responsibilities are positions that offer meaningful input into governmental decision-making.

16

*Id*. at 19. Defendants argue the Court erred in giving Final Instructions No. 17 and 18 because the Court did not properly define "meaningful input into governmental decisionmaking." Defendants contend that the Court should have, instead, provided the jury with Defendants' proposed instruction, which stated:

> In order to decide whether political affiliation is an appropriate requirement for a plaintiff's position, you must decide whether a plaintiff had an opportunity to offer meaningful input into governmental decision-making. To decide this question, you may consider a variety of factors including, but not necessarily limited to, whether the employee:
>
> (1) is exempt from union protection;
> (2) used political influence to be hired;
> (3) has input into budgeting;
> (4) has input into employee hiring and discipline;
> (5) is authorized to speak in the name of employees or officials who make governmental policy;
> (6) influences government programs or policy;
> (7) has frequent contact with elected officials or other employees who have meaningful input into governmental decision-making;
> (8) has access to confidential information.
>
> If you find that Defendant has proved by a preponderance of the evidence that a Plaintiff had an opportunity to offer meaningful input into governmental decision-making, then you must find for the Defendants with respect to that Plaintiff and you will not consider the question of damages.

(Filing No. 158-1 at 2-3). Defendants assert that the Court's omission of the "factors" prejudiced them because Plaintiffs argued in closing that Final Instruction No. 17 requires the jury to determine only whether Plaintiffs engaged in political work.

With respect to Defendants complaint concerning Plaintiffs' closing statement, the Court notes that during trial, Defendants did not object to Plaintiffs argument. In addition, Defendant argued extensively regarding what Governmental decision-making means and provided numerous examples for the jury to consider. (Filing No. 193 at 60-83.)

17

The Court denies Defendants' Motion for a new trial and notes that it was not obligated to include piecemeal factors devised by Defendants. As Plaintiffs' noted in their brief, some of the factors proposed by Defendants are contradictory with existing Seventh Circuit law and some are not relevant to the facts in this case. The Seventh Circuit has made clear that "identifying [jobs that require political loyalty] is no mean feat." *Riley*, 425 F.3d at 359. Determining the jobs exempted from First Amendment protection is fact specific and the uncontradicted standard states only that a person is unprotected under the First Amendment if: "political loyalty is 'essential to the discharge of the employee's governmental responsibilities.'" *Tomczak*, 765 F.2d at 640 (citations omitted). The Supreme Court and Seventh Circuit list only the following two factors when determining whether "political loyalty" is essential:

> either…the job involves the making of policy and thus the exercise of political judgment or the provision of political advice to the elected superior, *or* because it is a job (such as speechwriting) that gives the holder access to his political superiors' confidential, politically sensitive thoughts.

*Riley*, 425 F.3d at 359 (citing *Elrod v. Burns,* 427 U.S. 347, 367–68 (1976); *Branti v. Finkel,* 445 U.S. 507, 518 (1980) (emphasis added). The Court concludes, because Final Instruction No. 17 mirrors the uncontradicted standard, Defendants' Motion for a new trial is **denied**. The Court also finds, when "considering the instructions as a whole, along with all of the evidence and arguments," Defendants were not prejudiced because the jury was not misinformed about the applicable law.

### IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion for Judgment as a Matter of Law and **DENIES** the alternative Motion for a New Trial ([Filing No. 214](Filing No. 214)).

As a final matter, the Court notes that on May 8, 2017 it granted the Defendants' Unopposed Motion to Stay Briefing on Attorney Fees and Costs. ([Filing No. 216](#).) The stay will remain in effect until such time as either party moves for it to be lifted.

**SO ORDERED**.

Date: 9/8/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

Jessica Williams Schnelker
FROST BROWN TODD LLC
jschnelker@fbtlaw.com

Evan Buck Broderick
LAW OFFICE OF EVAN B. BRODERICK
attorneyevanbroderick@gmail.com

Jeffrey A. Macey
MACEY SWANSON & ALLMAN
jmacey@maceylaw.com

Quincy Erica Sauer
MACEY SWANSON & ALLMAN
qsauer@maceylaw.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com